0861 Sealed Appellee v. Sealed Appellant. Mr. Wright. To decide whether a defendant who has been found not guilty only by reason of insanity shall be civilly committed, the court must answer three questions. In the order under review here, found at pages 350 through 352 of the record, the district court's answer to all three questions were infected by clear factual error and by legal error. To review, those three questions are, first, is the defendant presently suffering from a mental disease or defect? I will call that question one. Question two is, would the defendant's release create a substantial risk of bodily injury or serious property damage to another? And three, if so, is the substantial risk, quote, due to or caused by the mental disease or defect? As I say, the district court's answer to all three questions was infected by clear error. On the first question, whether the defendant is currently suffering from a mental disease or defect, the district court's legal error was in conflating the psychological concept of mental illness with the legal concept of mental disease or defect. The district court's factual error was to read the risk report as diagnosing the defendant with two mental illnesses, namely bipolar disorder. Now, as to this point, you aren't aligned with the report from BOP, correct? As to this first issue where they did find there was a mental illness. Oh, I agree that there was a mental illness, or whatever psychological term you want to use for it. I am aligned with them in the sense that they said this is a mental illness, but they denied that in this specific case, at least at present, when they were evaluating it, that it rose to the level to satisfy the forensic or legal concept of a mental disease or defect. And that was your burden of production and persuasion. You had to show by clear and convincing evidence that it did rise, that it didn't rise, correct? That's the burden on the defendant. The way 4243 is structured is, you had to show by clear and convincing evidence. Right, we had the burden that at least one, the answer to at least one of these questions is no. That's our burden. And so... And then we're just reviewing those for clear error, you agree? That's the standard review here? Yes, though to the extent that that touches on legal questions, and I think those are unavoidable, I think legal questions should be reviewed to So for instance, the question of whether a mental illness or a mood disorder or emotional problem, whether that, you know, whether that is the same as mental disease or defect, that's a great turn. Well this court is very clear that that's a question of law for the court to decide. Factually, just zeroing in on the letters that he wrote to the teller of the bank, why wouldn't that be sufficient proof for us to affirm the district court here? Just the district court's assessment of those letters. Sufficient proof that he presently suffered from a mental disease or defect? Well, or the causation nexus, really both, that he's writing to victims of the crime that he committed, not guilty by reason of insanity, but why wouldn't that alone suffice? For multiple reasons, Judge Higginson, and if we want to skip to the third one, I don't want to miss... I know, I know, that's, to me, that's the one that's the most interesting because obviously the panel and the government at the time agreed with you. Right. So, but I'm sort of thinking it is an independent determination of the district judge, was a stipulated bench trial, he read the report, and then those letters are, I'm just wondering what, how would we possibly say clear error when we have an individual who wrote those targeted aggressive violent letters? Well, for a minute, I'm going to talk about the second point, not just because I'm being obstinate, but because it's to help answer your question. On the risk, the risk specifically that has to be proven, or disproven in our case, I'm going to speak ignoring the double-triple negatives. It is our burden, right? The risk that is at issue is the risk, a substantial risk, not just a possibility, a substantial risk of bodily injury or serious property damage. Now, this, unlike some definitions of violence, threat alone is not enough. If the district court could find there was a 100% chance that a mental illness would cause an empty threat of violence, that would not be sufficient, or I guess, again, it would be sufficient to meet our burden because if the only thing was a empty threat of violence, but without a substantial risk of bodily injury, we win under that because the statutory standard is a substantial risk. Are you arguing this was, there was an empty threat? Is that your position? The letters were an empty threat, yes, and that's also what the panel found. They said he would not intentionally hurt anyone. You know, there's no intent to carry this out, is what they said. And so, and I think that's correct. As a matter of fact, at the time, the defendant didn't even remember writing those letters. I would also say that those letters are not the offense, though again, what we're worried about in general is what's going to happen if he were to be released. And so if he got out and did exactly the same thing a third time, goes to the same bank, writes the same letters, threatens to kill the teller again, still no civil commitment in your view. So if it's a risk assessment, just imagine that we know 100% certainty he can't be civilly committed here for the reasons that you've argued in the appeal. So he goes back to the same bank and does the same thing again. If we knew that this third bank robbery would resemble the first two, and by that I mean it is, I don't deny it's a bank robbery, but it is barely a bank robbery. You know, bank robbery by intimidation, an implicit threat of injury, all he said is give me the money, don't do anything stupid, both times. There is no, if we knew, if we could know, he would not carry out the threat, he would not do it, then no. If we knew that with 100% certainty, the statute would say no, you would not commit him on those grounds. You could imprison him on that basis, because in all likelihood his evaluation at that time would be like the first time he robbed a bank, and like when the panel did the assessment of him here, namely that his mood disorder, however you characterize it, did not rise to the level of severity to meet the legal standard. But why would his assessment not be the same as it was the second time he robbed a bank? Why would he not be not guilty by reason of insanity? On your theory, why would he not be not guilty by reason of insanity on the third bank robbery, and still cannot be civilly committed? So in your view, these two things, if I'm following the theory, the substantive standard for not reason by guilty of insanity, and the civil commitment standard that you bear the burden of, as you said to Judge Higginson, operate in tandem so that the system is incapable of protecting itself against the mayhem. I disagree, Your Honor, because he was found not insane as to the first bank robbery. I'm sorry, I said the second. That's my answer to your question. Most of the time he has committed the crimes on which any assessment of risk would be based, he was not insane. He may have had a mood disorder, but he was not insane. It has not risen to that level, and I would submit that this is a marginal case of insanity. Now, the government's experts are the ones who said that he was insane. The events that triggered the evaluation were current events. These letters that Judge Higginson mentioned were not like anything that was observed either during the original offense or during the lead-up to the offense. This was not a situation where the defense was preparing that defense. The worry was, wait, maybe something's wrong. But he was found not guilty by reason of insanity. He was. And the record seems pretty conclusive. Deeply depressed, maybe suicidal. Admittedly, that's harm to himself. But here's my question, I guess, and I know you want the opportunity to point out the legal error you see. But in my eye, the legal misapprehension the district court seemed to have had was one that actually favors the government, in that throughout, this district judge thought this man cannot be discharged without conditions. And then halfway through the hearing, he realizes, I don't have statutory authority to do that. So that tells me the district judge throughout was consistent that this man couldn't be released. Do you agree with that? I mean, I think you can read the opinion that way. The court never says so.  But certainly the court was prepared to release him on conditions. I mean, I think it's clear. That was the plan. And I guess here's just more of a policy question. The way E, subsections E, F, and G work, he will then get reevaluated once he's incarcerated. Yes. And at that point, the statutory regime does allow for release with conditions. So why isn't that actually in your client's interest? And the related question is, do you know whether the first panel's report is used at all when they're assessing a subsection F discharge? A bunch of questions. The second question, or the final question, yes, everyone is looking at everyone's reports. So all of the reports are mentioned at the beginning of all of the reports. The reason that's not good enough is because a reevaluation or a release-type determination, that doesn't allow the defendant to make the argument that I'm making now, which is no nexus, no connection. Maybe he presented a risk. It's hard to say, but maybe. It probably wasn't a substantial risk. I mean, it wasn't a substantial risk. There's no finding that it was a substantial risk. The panel never said so, and that's why I want to be sure I say that before the end, if you missed all three points. But also that whatever risk he presents is not caused by the mental disease or defense. When you say there's no finding of substantial by the panel, so on page two of the district court's ruling, the paragraph that starts, Is that a mistake? Did you want to have time to get to that? I did want to have time to get to that, Your Honor. On the second question, the district court's clear error on the second question was to say, this panel found that his release would present a substantial risk of bodily injury or property damage. No, they didn't. I mean, it's absolutely not what they said. As a matter of fact, you can look at their report. The discussion of risk, which is somewhat detailed on question number two, is found on pages 264 through 267. And most of the discussion in the briefing and in the order is like the summary of this in 268 of the record. But no, on page 267, the panel said, overall, his current depressive symptoms have not been associated with any form of violence. Do they ever use the word substantial? They say that the court has to find that. No, do they say, they never conclude there is, but they say a possible. Possible. They say it is possible that he would commit these same crimes again. But the reason they say that is because he has committed them before. Now, we know that for the first bank robbery, the report is referenced in there. There was a competency report. There was an insanity report prepared for the first bank robbery. And it was no, he is competent and he was not insane at the time of the offense. And so there is some risk that he would do this again. And they acknowledge that he's, but they don't say a substantial risk. What's your answer to just a sort of mile high view of this case, which is it's a man who's doing arsons and bank robberies, plural. And in the final one, he's writing very vivid graphic threats to kill the teller. How would we reverse and say he had to be released with no conditions, as distinct from put him in a system that will still let him get evaluated, still let him get released. But now it is with the conditions the district court wants. He's got to have a home. He's got to take his meds. Doesn't the latter sound infinitely preferable? Well, Your Honor, it's not a matter of preference, right? As we pointed out, if that was the preference, there's an easy way to achieve this that complies with the statute. In this specific case, and that is to say the defendant was on supervised release. And the district court had the authority to order him to attend psychological counseling, to cooperate with those efforts. So he was already on supervised release in the sort of undisputed he is guilty of that bank robbery. And so that is one way that the preference could be achieved. But the answer to your question is, for right or for wrong, if we're looking at the statutory text, what Congress said is, if a defendant, if you knew with 100% certainty that a defendant would commit horrible violence when he was released, but it was not due to a mental disease or defect, which again, we deny that it existed at the time of this, at the time of the risk assessment, or the time of the trial proceedings. But if you knew with 100%, but there was not a causation relationship, civil commitment under this statute. That nexus emphasis of yours, though, really is, therefore, requires your answer to Judge Richman, which is these very graphic threats. We just have to say the district court was wrong saying they were anything but empty. Right? You have to win on that. I don't know that I have to win on that because. Because if they're real at all. Well, certainly the panel said, and my friend will say, oh, the panel said he wouldn't do it intentionally, and that's not the same. All of that discussion of what he would do, he didn't mean to hurt anybody, is to say there's no evidence that he would actually do that. He would commit assault and violence. He might threaten if he was in a manic episode or something like that, and that would be bank robbery. So long as you could appreciate the nature of your actions in your discussion and the wrongfulness of it, you would be guilty of bank robbery even if the causal relationship was there. Maybe this is one thing I don't want to miss saying. The nexus requirements are different for the insanity defense and for the release your civil commitment. The nexus requirement for insanity, at least under Section 17, is did the disease or defect cause a failure of appreciation? Here, it's did it cause the injury or the risk of injury? Did it cause the risk of property damage? And threat is not enough. Again, it's just not enough. I would also say that that's not the offense, but no one, for instance, has suggested that the defendant would do those things. Those are certainly not particularly tied to reality. But that sort of manic disassociation from reality reflected in those letters was not present at the time of the bank robbery. I would also say there's nothing connecting the arson convictions at all either. And so, again, that's another area that missed your report. I believe I've reserved a little time for that. May it please the Court. I think it's useful to do a little table-setting exercise here to cover some of the things we've been alluding to already. Principally, one, how the statute operates. And then, two, what the standard of review is and how that interplays with the statute. So, under the statute, if a person has been found not guilty by reason of insanity, the statute says that the person shall be committed to a suitable facility for treatment and hospitalization until such time as they're eligible for release pursuant to the other provisions within the statute. So the statute has an automatic commitment provision essentially upon the finding of not guilty by reason of insanity. Now, what does the statute say about establishing eligibility for release from that automatic commitment? Well, as I think it's undisputed, for an offense like this, the defendant has the burden to show by clear and convincing evidence that his release would not give rise to a substantial risk of the serious property damage or serious bodily injury to another person. So the defendant has that burden to show eligibility for release. Now, what does clear and convincing evidence mean? As I know the court is aware, clear and convincing, obviously, it's not beyond a reasonable doubt, but it's about one tick down from that. So clear and convincing evidence is the type of evidence that gives rise to a firm belief in the fact finder that because the evidence is so clear and so direct and so weighty that the fact finder just has no hesitation about making the decision that this is what the facts are. So that was the burden that the defendant bore. That was essentially what the district court was charged by this statute with evaluating, is whether that's— Would you agree one of the wrinkles to this case is, yes, the burdens are all assigned, but it would be natural for the defense to think, well, that's relaxed if the government agrees with me. In other words, this defendant goes into this hearing thinking, I've got a unanimous BOP panel of experts, and as with the not guilty by reason of insanity, the government's saying, we agree, no substantial risk due to the mental illness. I understand that point, Your Honor. I think the record here doesn't actually show that. The parties filed—after the report came in, the parties filed their stipulation where the government did agree that this person could be released essentially. Judge, the district court, though, at that time entered an order—this is at page 109 of the record—an order that specifically says, essentially, I see that y'all have stipulated to this, but it's me as the court who has to make this finding under this standard. And so we are going to have a hearing about this, and I'm going to make the decision. So that was an order that came out after the stipulation. Remind me, though, when the government—remind me about the hearing. When the government gets to the hearing, does it say, okay, we actually don't think what we said earlier is true? Did the government change course? No, the government did not change its course. So that, again, it just—it's an unusual case. Maybe you know one somewhere in the federal orders where the government and a unanimous panel with a stipulated bench trial, everyone is saying he doesn't pose a substantial risk due to his mental—  And yet we're reviewing the district court's contrary determination. That's correct. I mean, that is what the situation is. I don't think it's a totally unique scenario. If I recall, and I may be corrected on this, I think one of the cases that cited maybe the Jackson case involved a similar situation where there was a report and the government did not put on any contrary evidence, but nonetheless the district court found that the standard was not met. And at the end of the day—and this gets to the sort of clear error aspect of this, obviously. This court is reviewing the district court's finding for clear error. But in that regard, do you disagree with his point that the district court's ruling, that paragraph, the first full one on page 2, is mistaken? When the district court said that the panel had concluded there was a substantial risk, nowhere does the panel actually say substantial risk. So I don't—I guess I would disagree in the sense that I think that if you read the—first of all, the panel's report is not a legal brief. No, I know. But I'm just asking, does the report anywhere say this individual presents a substantial as opposed to possible risk to others? I don't think it specifically says that. But I will say that the implication of the panel's discussion I think does give rise to at least a plausible inference that the panel did believe there was a substantial risk. Part of the reason I say that is because— Risk to others. Clearly he had suicidal tendencies. Risk to others, correct. And part of the reason I say that is because, as was summarized earlier, the panel sort of proceeded under a three-question rubric. And they said, you know, is there mental illness, is there a substantial risk, and then is the risk due to the mental illness? Well, the panel reached the third question, right? So the panel said, okay, now this all hinges on whether the risk is due to the mental issue. So I think the district court was not—certainly didn't commit clear error by understanding the panel to, however inarticulately phrased, to believe there was a substantial risk. Because otherwise why would the panel have gone on to its third analysis of whether that risk, whatever it was—and granted, I don't think the panel specifically said that substantial risk. But it did say that risk, whether it hinges on the mental illness. So I think the report can plausibly be read as saying that there was some kind of substantial risk. But I think a bigger picture point here is that really at the end of the day I don't think that matters. Because what the district court basically said is I am not convinced by this opinion, this report. I mean the district court literally said the court is not convinced. I am not persuaded by this. I believe that, you know, without imposing conditions that this risk would be dangerous. So the district court as the fact finder, particularly in this clear and convincing evidence rubric, was certainly entitled to say I'm just not convinced. I know that this is the evidence that's before me. Remind me, did the judge say and here are the conditions that would reassure me? Was it home—the guy is sort of homeless, but was it that he has to have a home and that way he has to take his meds? So the district court did not get to the point of explaining exactly what he believes the conditions would need to be. Because when he started talking about how, you know, this is in the transcript basically, but saying that I think that the person can be released but with conditions, the parties interrupted and said, Your Honor, may we approach the bench? And then there was this— And there's no circuit out there that does think under a Section E discharge a district court could have conditions. Everyone accepts. And your read of the law is that? Absolutely. So once a person is civilly committed, if they are—if they recover and are— No, at that point it's F and G and you can revoke if they violate the conditions. But under this initial determination, the district— Correct. Once you all did your study and presented it, there's just no law out there that a judge has authority to impose conditions. Correct. The only options at the time of this initial dangerousness hearing are either outright release with no conditions or, you know, the continued hospitalization. There is no third path for conditions. And that is well settled. And that was stipulated to by both parties in the district court. I appreciate you answering the questions. Related to that, do you have knowledge as to whether if we affirm, and he goes into the Section F and G sections, will the same original report be the one that's reviewed or will they somehow commission a new panel? So I think what will happen is—and I've done a lot of these in the context of civil commitments where there's a similar, you know, possibility of a conditional release— is typically there's a new evaluation because it's done based on the person's current state.  It's been 18 months. It's been two years. They seem to be improving. There is a new report that's essentially generated, which is the mechanism by which the evaluator essentially reaches an opinion. As part of that report, they invariably, as was alluded to, will review the entire file, including any prior competency, sanity, dangerousness reports. So that will be in the sort of record of the analysis, but it will be a new analysis to the extent that it has to do with the person's current condition. So in light of the fact they're reviewing everything, is it the government's position there are flaws in the original report that the government had agreed to, or is your position a narrow one which is just this is the authority of the district judge and there's no clear evidence to reverse it? In other words, should we leave largely intact the original report, or do you think it deserves criticism? I don't think that this court needs to get into the sort of nitpicking of this report and whether this sort of granular detail about was this part of the report correct or not. I think the fact that the district court was the fact finder and was not persuaded by it is sufficient for this court to simply affirm and essentially leave to a later day what is going to be said in a later report when somebody at the Bureau of Prisons decides that they think that this person is now ready for conditional release and to try it again. So I don't think the court has to get into that. I mean this court is not reviewing de novo or really in any sense what the report said. This court is reviewing the district court's determination that it just wasn't persuaded by the report. The letters jump out most. You heard your opposing counsel say essentially as a matter of law, a threat can't fit into this calculus because the threat is inchoate. I don't think that's in any way correct. I mean there's plenty of cases. We cite cases where people have been civilly committed in a context where they were for example found incompetent to stand trial. So they never were found not guilty by reason of insanity. There's not this presumption. The government bears the burden to civilly commit the person and we cite these cases in our brief where those kind of civil commitments have been obtained based on threats. So I think it's absolutely a relevant data point that this person is making these extremely graphic and threatening letters even after he's been incarcerated, after and while he's receiving treatment. I mean I think that's another aspect of, again I don't think this court needs to nitpick what the report said. But I think to some extent the panel may not have fully understood. There was a lot of talk in the report of whether things were severe enough. They talk about well he was apparently mentally ill but it didn't appear that he had severe psychosis at the exact time of his arrest or things like that. The issue of whether it's a severe mental disease or defect has to do with the insanity clause. So under 18 U.S.C. 17 you can only prevail essentially on an insanity defense if you show that you had a severe mental disease or defect. Now that severe language does not appear in 42-43. So there's no longer a necessity to show a severe mental disease or defect. It's just a mental disease or defect. My sort of personal read of the report is I think the panel was a little bit confused because they were used to dealing with an insanity issue. And that has to do with the severity of it. And they sort of imported the severity concept into this where it doesn't exist under 42-43. Again that's just kind of my read of what was going on. But again I don't think this court needs to nitpick the panel's decision. I think it's just a matter of did the district court clearly err as the fact finder. And again to some extent, again we stipulated in the district court that we thought he could be released.  I mean to some extent we're kind of arguing against our own interests here in the sense that a rule that the district court has to follow the government's recommendation. Whether it be for what sentence to impose or whether substantial assistance has been rendered or whether to commit somebody or not. If the rule is that the district court has to follow what we say, that rule actually benefits us. It gives us more leverage and control and plea negotiations and sentencing and all that sort of thing. So under the kind of raw analysis of what gives the government more power, arguably that rule would give the government more power. But the government also has an interest in obviously upholding and vindicating what the law is. And what the law is, is as announced in section 4243, which is a statute that was passed by Congress, that was signed by the President. That law says that this task of evaluating whether to release somebody has been allocated to the district court. Right? So that is the law. And that's why we're here today basically saying, you know... And our Jackson decision covers the law correctly. I'm sorry? The Jackson decision pretty much covers Chapter 13. I think that's right. So I think given the standard review, the underlying burden, the statute's allocation of this decision to the district court, I think at the end of the day, even though it's not what the government articulated and advocated for in the district court, it is under the state of the law that applies here the correct result to affirm the district court. So if there's further questions, I'm happy to entertain. Otherwise, I would ask that the judgment be affirmed. Thank you.  I do want to cover the clear errors on all three points. But before that, I think it's important to tell you there was an annual review. It's not part of our record here. It's not easy to access. I happen to see it on a colleague's desk. And a different panel found that he was not suitable for release, conditional or otherwise. Now... You mean since he's already had the subsection? The first one was in August of last year. Now, I probably would have said it in the brief if I had known about it. Again, sealed documents. You don't see them very often. I would have a lot to say about that if it were before the court and if the court would like afterwards for us to supplement the record. But this is what I was saying before is I want to focus on the... Well, is this proceeding now moved? Has that superseded this? Absolutely not, Your Honor. And I think that's what's so important about this. We are challenging the initial commitment decision. Because the criteria are not the same. And this is what I was getting at. This question of the nexus, the causal nexus, is not statutorily in the subsequent decision. And because the decision itself was in error. Like I said, I'm happy to supplement the record with that under seal and address what a lot of it comes from. Issues of the institutional environment and not release. So on page one, the district court said... This is just misreading the report. The panel found two mental illnesses. No, it didn't. They said the insanity report was wrong. It's not major depressive disorder. It's bipolar I. Legally, the district court conflated mental illness with mental disease or defect. On the government's brief on page 20, they talk about what rises to mental disease or defect. It's got to go to behavior controls. And depressive symptoms typically do not do that. It's very unusual for someone to just be so sad that they aren't responsible for a federal crime like bank robbery. On the second point, the district court said the panel found a substantial risk. No, they didn't. Nowhere in there. And it's not a fair reading of what they said. The district court said, I disagree with the report. He didn't disagree with the report about, you know, failing to find a substantial risk. Most of the factors would say, no, there's not a risk or whatever. None of that. He just misread the report. Let's take out all the attitudes out of that report and just look at the facts that are in the report. Is the district court entitled to draw his own conclusion about substantial risk? The court would be, yes. I deny that that's what the court did here. But would it be entitled to? To draw its own conclusion about substantial risk based on all of the evidence before it? Yes, that's the district court's role. That I agree with. So it's not a question of did the court—it's just a misreading of the evidence. And that's the only thing that they found. Could the district court say bank robbery entails an inherent risk of bodily injury and arson inheres an inherent risk in property damage, and that's sufficient under subsection C? Well— The mere fact that these crimes are inherently risky. The standard is that the release would cause a substantial risk. So if it was a—hypothetically, I was saying before a 100% probability, that's not what he said, right? If you had a 100% probability, yes, you could do that for arson and property damage. Bank robbery is complicated, and it would have been an interesting question to brief and argue about, but as Judge Higginson alluded to, we didn't do that below because it was whatever the standard is, we need it. That was whatever we want to brief, and we need the higher standard. But counsel, I just read you—I asked you if the district court could say it, but it's a sentence that's in the report. It is the conclusion of the panel, right? They say, yeah, he's probably going to do it again, or there's a chance that he's going to do it again, and these are inherently risky. The difference between 1 and 2 of what you said there is huge. I mean, that is the ballgame. Is it possible he'll do it again, or is there a substantial risk that he will do it again? And what is substantial? Is that 50, 40, not 100? This is a very difficult—a very difficult enterprise. Does the district court have discretion to choose what it thinks is substantial? If it had, we could be here fighting about that, right? If we could fight about the legal determination, if the court was making its own independent determination, hypothetical, what the court could have done. Not what happened here. The court said the panel says there was a substantial risk. No, they didn't. All right, but again, they didn't use those words. Let's take every adjective out of the report. So the district court is just looking at what facts did the panel say exist? Can the district court say, okay, I think there's a substantial risk? The court could find either way on this record. So then why are we here? I say the court could find either way. There's a lot of evidence cited in the report to say, though there's a possibility, it's probably not going to happen. It's probably the threats are in. Most likely they're in. He reads the facts and disagrees. He should, but he didn't. So that's my point on two. And on three, the causal nexus, the court said—and this is really important—the court said the panel found that two illnesses—again, wrong. They did not say two illnesses. Or a relationship. No, they didn't. The panel said the court has previously found a nexus when he was declared insane. As to the index of this, the current of this, the court said to his prior acts, plural, of bank robbery and arson. No. No, they didn't. They did not say that. That's the district court reading something in the report that's not there. Thank you. Thank you, Kiyosu. Okay.